UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DONALD B.,

           Plaintiff,

v.                                                                                          1:20-CV-1090
                                                                                              (ML)
COMMISSIONER OF SOCIAL
SECURITY,

           Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LEGAL AID SOCIETY OF MID-NEW YORK<br>  Counsel for the Plaintiff<br>221 South Warren Street, Suite 310<br>Syracuse, New York 13202 | ELIZABETH LOMBARDI, ESQ. |
| SOCIAL SECURITY ADMINISTRATION<br>  Counsel for the Defendant<br>J.F.K. Federal Building, Room 625<br>15 New Sudbury Street<br>Boston, Massachusetts 02203 | JESSICA RICHARDS, ESQ.<br>Special Assistant U.S. Attorney |

MIROSLAV LOVRIC, United States Magistrate Judge

## ORDER

      Currently pending before the Court in this action, in which Plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1]  Oral

---

[1]  This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18.  Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

1

argument was heard in connection with those motions on February 1, 2022, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination was supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by Plaintiff in this appeal.

After due deliberation, and based upon the Court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is

**ORDERED** as follows:

1) Plaintiff's motion for judgment on the pleadings (Dkt. No. 19) is DENIED.

2) Defendant's motion for judgment on the pleadings (Dkt. No. 25) is GRANTED.

3) The Commissioner's decision denying Plaintiff Social Security benefits is AFFIRMED.

4) Plaintiff's Complaint (Dkt. No. 1) is DISMISSED.

5) The Clerk of Court is respectfully directed to enter judgment, based upon this determination, DISMISSING Plaintiff's Complaint in its entirety and closing this case.

Dated: February 9, 2022
      Binghamton, New York

_____
Miroslav Lovric
United States Magistrate Judge
Northern District of New York

```
                                                               1

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK
_____
B.

VS.                   20-CV-1090

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.

_____



                  Transcript of an Order

                   Telephone conference

                    February 1, 2022



         The HONORABLE MIROSLAV Lovric,Presiding.




                     A P P E A R A N C E S


For Plaintiff:      ELIZABETH LOMBARDI, ESQ.

For Defendant:      JESSICA RICHARDS ,ESQ.


                Ruth I. Lynch, RPR, RMR, NYSRCR
                Official United States Court Reporter
                  Binghamton, New York  13901
```

1           THE COURT:  All right.  Well, as I indicated
2  at the commencement of the proceeding, the Court's
3  intention is to render a decision and also the
4  analysis and reasoning that the Court applied in
5  reaching the decision in this matter.
6           And as I indicated, the order of the Court
7  will be transcribed and that transcript will be
8  appended to the summary order.  And so the parties
9  will have that in writing.  So if you miss something,
10 don't worry, you will have this in writing to review.
11          So let me begin by indicating that the
12 Plaintiff has commenced this proceeding pursuant to
13 42 USC Section 405(g) and 1383(c) to challenge the
14 adverse determination by the Commissioner of Social
15 Security finding that he was not disabled at the
16 relevant times and therefore ineligible for the
17 benefits that he sought.
18          By way of background, I set forth the
19 following facts.
20          Plaintiff was born in the year 1965.  The
21 Court does not set forth the specific month and date
22 in order to protect the privacy of Plaintiff.  But
23 Plaintiff was born in 1965 and therefore is currently
24 approximately 56 years of age.  He was 50 years old at
25 the alleged onset of his disability on August 28th of

1  2016.
2          Plaintiff has been living with his ex-wife
3  since December of 2018.
4          Plaintiff is 5 feet 7 inches in height and
5  weighs approximately 165 pounds.
6          Plaintiff is a high school graduate and can
7  communicate in English.
8          Plaintiff's past work experience was as a
9  bartender and a waiter.
10         Plaintiff suffers from seizures, migraines,
11 polyneuropathy, obesity, major depressive disorder,
12 and alcohol and cannabis abuse.  He also has acute
13 kidney injury.
14         Plaintiff is prescribed Keppra for seizures
15 and gabapentin for headaches.
16         Plaintiff testified that on days that he
17 experiences a seizure he is unable to perform any
18 chores.  Plaintiff also testified that on days he is
19 feeling okay he is able to do some household chores.
20         Plaintiff has not had a driver's license
21 since the 1990s.
22         Procedurally the Court sets forth the
23 following facts.
24         Plaintiff applied for Title II benefits on
25 August 24th, 2017, alleging an onset date of

4

1  August 28th of 2016.
2           In support of his claim for disability
3  benefits, Plaintiff claims disability based on seizure
4  disorder, migraine headaches, polyneuropathy, and
5  obesity.
6           Administrative Law Judge Brian LeCours
7  conducted a hearing on April 24th of 2019 to address
8  Plaintiff's application for benefits.
9           ALJ LeCours issued an unfavorable decision
10 on June 11th of 2019.  That decision became a final
11 determination of the agency, on March 10th, 2020, when
12 the Social Security Administration Appeals Council
13 denied Plaintiff's application for review.
14          This action was commenced on September 14th,
15 2020, and it is timely.
16          In his decision, ALJ LeCours applied the
17 familiar five-step test for determining disability.
18          At step one he concluded that Plaintiff had
19 not engaged in substantial gainful activity since
20 August 28, 2016, through December 31st of 2020, which
21 was the date on which Plaintiff was last insured.
22          At step two the ALJ concluded that Plaintiff
23 suffers from severe impairments that impose more than
24 minimal limitations on his ability to perform basic
25 work activities, specifically seizure disorder,

1   migraine headaches, polyneuropathy, obesity, major
2   depressive disorder, and alcohol and cannabis abuse in
3   early sustained remission.
4           At step three ALJ LeCours concluded that
5   Plaintiff's conditions do not meet or medically equal
6   any of the listed presumptively disabling conditions
7   set forth in the Commissioner's regulations, focusing
8   on Listing 1.0, which relates to musculoskeletal
9   system; Listing 11.0, which is neurological disorders;
10  Listing 12.04, which relates to depressive, bipolar,
11  and related disorders; and Listing 12.06, which
12  relates to anxiety and obsessive compulsive disorder.
13          The ALJ next determined that Plaintiff
14  retains the residual functional capacity, also known
15  as RFC, to perform less than the full range of medium
16  work as defined in 20 CFR 404.1567(c).  More
17  specifically, the ALJ indicated he can lift and/or
18  carry up to 50 pounds maximum, push and/or pull up to
19  25 pounds frequently, and stand and/or walk for up to
20  6 hours in an 8-hour workday.  The ALJ noted he cannot
21  climb ladders, ropes, or scaffolds and must avoid
22  exposure to hazardous conditions, such as unprotected
23  heights and dangerous machinery.  He cannot do any
24  commercial driving.  Psychiatrically, he can only
25  perform jobs that consist of unskilled tasks, work

6

1  requiring little to no judgment to do simple duties
2  that can be learned on the job in a short period of
3  time.
4        At step four the ALJ concluded that
5  Plaintiff could perform his past relevant work as a
6  bartender and waiter.  The ALJ still proceeded to
7  step five, even though he made that conclusion at
8  step four.
9        At step five the ALJ concluded that in
10 addition to his past work, Plaintiff could perform
11 alternative work as a cleaner II, ALJ noting that
12 there are over 20,000 jobs nationally; bartender
13 helper, noting there are over 37,000 jobs nationally;
14 dining room attendant, in that there are over 44,000
15 jobs nationally; counter attendant, noting over 48,000
16 jobs nationally; fast food worker, noting there are
17 over 1.4 million jobs nationally; and fountain server,
18 noting over 13,000 jobs nationally.  The ALJ relied on
19 hearing testimony from a vocational expert and also
20 relied on the Dictionary of Occupational Titles, which
21 is also referred to as DOT.
22        Now, as you know, the Court's functional
23 role in this case is limited and extremely
24 deferential.  I must determine whether correct legal
25 principles were applied and whether the determination

1   is supported by substantial evidence, defined as such
2   relevant evidence as a reasonable mind would find
3   sufficient to support a conclusion.  As the Second
4   Circuit noted in Brault V. Social Security
5   Administration Commissioner, found at 683 F.3d 443, a
6   2012 Second Circuit case, therein the standard, the
7   Second Circuit stated the standard is demanding, more
8   so than the clearly erroneous standard.  The Court
9   noted in Brault that once there is a finding of fact,
10  that fact can be rejected only if a reasonable fact
11  finder would have to conclude otherwise.
12          Now, Plaintiff raises several contentions on
13  appeal before this Court.
14          First, Plaintiff argues that the ALJ's RFC
15  is not supported by substantial evidence because the
16  ALJ failed to properly evaluate the Plaintiff's, A,
17  headaches; B, seizures; and, C, mental impairments.
18          Plaintiff also argues that the ALJ erred by
19  failing to resolve or explain conflicts between the
20  vocational expert's testimony and the DOT.
21          The Court's analysis is as follows:
22          First, I find that the ALJ properly
23  accounted for limitations caused by Plaintiff's
24  headaches.  Contrary to Plaintiff's contention, the
25  ALJ makes more than a single reference to Plaintiff's

1  headaches.  For example, the ALJ discussed Plaintiff's
2  health records that related to his headaches including
3  examinations at Orange Blossom Family Health Center on
4  August 1st, 2017, and September 5th of 2017; also
5  references by Dr. Corak on August 21st, 2018 -- excuse
6  me, that was August 21st of 2018; October 15 of 2018;
7  and November 19 of 2018.  ALJ also references, makes
8  reference, to Dr. Timofeev on March 14, 2019, and by
9  Dr. Ferraro on April 15th of 2019.
10         In addition, the ALJ stated that he
11 accommodated Plaintiff's subjective complaints into
12 the RFC.
13         Although Plaintiff argues that the ALJ did
14 not consider whether his headaches would cause
15 limitations in the RFC, Plaintiff bears the burden to
16 provide evidence establishing the RFC limitations.
17 See Poupore versus Astrue found at 566 F.3d 303 at
18 page 306, a Second Circuit 2009 case.
19         Based on the medical records dated in 2019
20 from Dr. Timofeev and Ferraro, who opined that
21 Plaintiff was normal and there were no changes to his
22 medication, the Court can glean the rationale that
23 Plaintiff's headaches would not have a meaningful
24 impact on his ability to perform his past work.
25         Second, I find that the ALJ properly

9

accounted for limitations caused by Plaintiff's seizures.

While it is impermissible for an ALJ to interpret raw medical data and substitute his own opinion for that of a medical source, it is within the ALJ's power to resolve conflicts in the medical record.  See Hanson versus Commissioner of Social Security at 15-CV-150, and that's found at 2016 West Law 3960486 at page 9, and that is a Northern District New York June 29, 2016 case.

Here the ALJ properly resolved conflicts in Plaintiff's medical record and determined that Plaintiff's later treatment records show a significant reduction in frequency of seizures when he achieved sobriety and remained committed to taking his medication on a consistent basis.  See transcript at page 36.

The ALJ permissibly found Dr. Timofeev's opinion to not be persuasive because he did not actually test the claimant and render a full opinion. See transcript at page 30.  In addition, the ALJ noted that Dr. Timofeev only examined Plaintiff on two occasions, in March and May of 2019, before rendering his opinion, which the ALJ stated was not long enough to fully ascertain Plaintiff's functional capabilities

10

or to determine whether he was capable of working.

Third, I find that the ALJ properly accounted for limitations caused by Plaintiff's mental impairments. The ALJ properly considered that Plaintiff was treated for depression in 2019 but noted that later medical records reflected that he did not have any suicidal ideations and had significantly improved functioning. In addition, the ALJ noted that Plaintiff had a good rapport with providers, was pleasant and cooperative, had good interactions with nonmedical staff, and appeared comfortable during appointments despite poor family relationships. The RFC also limited Plaintiff to jobs that consisted of unskilled tasks requiring little or no judgment and simple duties that can be learned on the job in a short period. Further, Plaintiff -- further, I note that Plaintiff failed to state what the greater limitations were that supported Plaintiff's mental impairments.

Fourth, I find that substantial evidence supports the ALJ's finding that Plaintiff could perform a significant number of jobs in the national economy.

The parties agree that the ALJ erred when he had concluded that Plaintiff could perform his past

```
                                                              11

 1   relevant work based on the RFC.  However, this was
 2   harmless error because the ALJ in fact proceeded to
 3   step five of the evaluation and concluded that
 4   Plaintiff could perform other work in the national
 5   economy.
 6              In addition, the parties agree that there is
 7   con -- that there is a conflict between the
 8   requirement for occasional climbing in the cleaner job
 9   and the limitation in Plaintiff's RFC to no climbing
10   ladders, ramps, or scaffolds.  As a result, this job
11   is not considered as a representative occupation and
12   should not have been considered by the ALJ.  However,
13   this finding was harmless because the ALJ identified
14   five other jobs that Plaintiff could perform, and
15   those five other jobs representing a total of
16   1,545,722 positions nationally.
17              I find that there was no disagreement
18   between the vocational expert's testimony and the DOT
19   regarding commercial driving.
20              Plaintiff's citation to case of Robert G
21   versus Saul at 19-CV-576, which is found at 2020 U.S.
22   District LEXIS 138114, and that's a Northern District
23   New York August 4th, 2020 case, the Court notes that
24   Plaintiff's citation to that case is inapposite.
25   There, the Court held that substantial evidence was
```

                                                           12

1    lacking to support the ALJ's finding that step five
2    where the RFC included no more than incidental contact
3    with the public and the DOT definitions of the jobs
4    that the vocational expert testified the claimant
5    could perform involved employee interaction with
6    people that is not significant.  There, the vocational
7    expert's testimony did not provide any explanation to
8    the ALJ regarding how the testimony conflicted with
9    the DOT or a reasonable basis to support the
10   testimony.
11            Whereas here the DOT does not discuss
12   commercial driving.  As a result, there was not, nor
13   could there be, a conflict that the ALJ was required
14   to resolve.  The DOT and the vocational expert's
15   testimony conflict where they disagreed in
16   categorizing or describing a requirement of a job as
17   it is performed in the national economy, but when the
18   vocational expert's testimony concerns information
19   outside the purview of the DOT, there is no conflict.
20   See Jasinski versus Barnhart at 341 F.3d 182 at
21   page 184, that's a Second Circuit 2003 case.
22            In addition, I find that there was no
23   conflict between the DOT's listed requirements
24   requiring environmental exposure or a fountain server
25   and Plaintiff's RFC because the DOT states that the

```
                                                          13

 1   fountain server job does not require exposure to
 2   moving mechanical parts or high exposed places.
 3           As a result, I find Plaintiff's -- I
 4   conclude, I should say, Plaintiff's motion for
 5   judgment on the pleadings is denied.  Defendant's
 6   motion for judgment on the pleadings is granted.
 7   Plaintiff's complaint is dismissed, and the
 8   Commissioner's decision denying Plaintiff benefits is
 9   affirmed.
10                       - - - - -
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```